

# MEMORANDUM

| | |
|---|---|
| To: | Honorable Kenneth P. Neiman |
| | U.S. Magistrate Judge |
| From: | Irma Garcia-Zingarelli |
| | U.S. Pretrial Services Officer |
| Re: | **HASKELL, Benjamin** |
| | **3:09cr30001-01** |
| Date: | May 20, 2009 |

On January 16, 2009, the defendant appeared before Your Honor after being named in a criminal complaint charging Conspiracy Against Civil Rights in violation of Title 18 U.S.C., Section 241. The defendant was ordered detained and a detention hearing was scheduled for January 21, 2009.

On January 21, 2009, the defendant appeared before the Court for a detention hearing. Your Honor ordered the defendant released on the following conditions:

1) Execute a $75,000 bond secured by property at 34 Brookside Circle, Springfield, MA.
2) Defendant execute a $75,000 unsecured bond.
3) Third-party custody to parents Michael & Cynthia McDonald.
4) Report to Pretrial Services as directed.
5) Maintain residence at 34 Brookside Circle Springfield, MA.
6) Obtain no passport.
7) No travel near Macedonia Church of God in Christ.
8) Avoid contact with co-defendant/victims.
9) Refrain from drug use.
10) Submit to random drug testing.
11) Home detention with Electronic Monitoring.
12) No contact with any individual unless approved by Pretrial Services.
13) Statutory conditions.

The government moved to appeal Your Honor's Order Setting Conditions of Release and the defendant's release was stayed pending appeal.

On January 23, 2009 the defendant appeared with counsel before the Honorable Michael A. Ponsor, U.S. District Judge and was ordered released on the same conditions previously set by Your Honor and the following additional conditions:

1) Remove all firearms/weapons from home.
2) Remove computers from home.

Please be advised that on April 30, 2009, the defendant provided a urine specimen which tested negative using an in-house hand held device. However, the sample appeared diluted and was sent to Kroll Laboratory, Inc for testing. The samples' Creatinine and Specific Gravity levels were Abnormal and the Specific Validity Status returned Invalid. *Please see attached sheet provided by Kroll Laboratory, Inc.*

On May 5, 2009, a sweat patch was placed on the defendant to monitor substance abuse. Mr. Haskell was instructed to report to the Pretrial Services office on May 11, 2009 to remove the sweat patch. The defendant reported as instructed but did not have the patch. When asked as to the whereabouts of the patch, he indicated that he did not know and stated that it may have been inside the shirt he was wearing prior to reporting to Pretrial Services. A new sweat patch was applied and a urine sample was taken on this date and sent to Kroll Laboratory, Inc for testing.

On May 11, 2009, the defendant contacted Pretrial Services and indicated that his sweat patch was coming loose. Defendant was instructed to report to Pretrial Services on May 12, 2009 at 8:00 a.m. to check on the condition of the sweat patch and to provide a urine specimen. This officer examined the patch and determined that it was still intact. The defendant was asked to provide a urine sample which was sent to Kroll Laboratory, Inc for testing. Please be advised that the urine taken on May 11, 2009, returned negative-diluted.

We are presently awaiting the results of the patches sent to CRL Toxicology Setup. The defendant has been informed that any other violations will be reported to the Court along with a recommendation that he appear to show cause why his conditions of release should not be revoked.

This information is being submitted to Your Honor for informational purposes.

Cc. Paul Smyth, AUSA
    Charles McGinty, Esq

# KROLL

April 10, 2009

450 Southlake Blvd.
Richmond, VA 23236
804 378 9130
Fax 804 379 5919
www.kroll.com

Kroll Laboratory Specialists, Inc. conducts validity tests on urine specimens submitted to our laboratory which ensure that the specimen is valid for urine drug testing. This letter explains the tests performed to evaluate the concentration of the urine, the interpretation of those tests, and steps you can take to help reduce the number of invalid specimens tested for your agency.

A valid result is dependent upon the submission of a valid urine specimen. A valid specimen in this context is one where the concentration of the urine is sufficient to yield in a drug result that gives an accurate reflection of the drug content of the urine. Since drug screening identifies drug present equal to or greater than a specific cutoff value, dilution of the urine dilutes the drug in the urine, and there is a concern that the drug may be diluted below the level of the cutoff.

**Creatinine** is a waste product produced by the body and excreted in the urine. Our laboratory has the capability of determining a quantitative level of creatinine in a urine specimen. A normal urine specimen has a creatinine level greater than 15 mg/dL.

**Specific gravity** is an indication of the amount of solid particles dissolved in a urine specimen. Our laboratory has the capability of determining a quantitative level of specific gravity in a urine specimen. A normal urine specimen has a specific gravity of greater than 1.003.

There are three categories of specimen validity related to an unacceptable urine concentration. These three categories reflect the <u>progression in the degree of dilution</u> of the urine specimen.

<u>**DILUTE:**</u> If a urine specimen has a creatinine value less than or equal to 15 mg/dL or a specific gravity of 1.002 or 1.003, then the specimen is considered dilute. This dilution can come from either drinking large volumes of liquid before providing a urine specimen, or pouring something into the urine cup at the time of collection.

<u>**INVALID:**</u> If a urine specimen has a specific gravity of 1.001 or 1.000 then the specimen is considered diluted to a greater degree than is listed above. These results will prompt the "INVALID" flag on the results report. Again, this dilution can come from either drinking large volumes of liquid before providing a urine specimen, or pouring something into the urine cup at the time of collection.

<u>**SUBSTITUTED:**</u> If a urine specimen has a creatinine value less than or equal to 2 mg/dL then the specimen is considered inconsistent with urine. This result will prompt the result "SUBSTITUTED" along with the comment "Specimen Substituted, not consistent with normal human urine." This can come from either drinking large volumes of liquid before providing a urine specimen, or pouring something into the urine cup at the time of collection or providing another liquid that is not urine (apple juice, Mountain Dew, etc...).

***Specimen validity is an evaluation of the validity of the SPECIMEN and NOT the validity of the test RESULT. <u>A positive result on a report with any of the validity flags is still a valid positive result.</u> The greatest concern regarding specimen validity is with negative specimens. A negative result accompanied by any of the above flags is a waste of your time and money. ***

 Companies